NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|   |   |
|---|---|
| COMCAST CABLE COMMUNICATIONS LLC, | : <br> : <br> : **OPINION** <br> : <br> Plaintiff,    : <br> :    Civil Action No. 06-4481 (WHW) <br> v.    : <br> : <br> PAUL R. KREIE,    : <br> : <br> Defendant.    : <br> : |

**Walls, Senior District Judge**

Plaintiff moves for entry of default judgment, pursuant to Fed. R. Civ. Pro. 55, against defendant Paul Kreie ("defendant") for violating the Communications Act, 47 U.S.C. §553. Pursuant to Fed. R. Civ. P. 78, plaintiff's motion is decided without oral argument. The motion is granted.

**FACTS AND PROCEDURAL BACKGROUND**

Plaintiff is the owner and operator of a cable television system. Subscribers to plaintiff's service purchase "basic" or "standard" packages of programming services, to which they may add premium programming services for additional monthly charges per service, ranging from approximately $7 to $13 per month per service.[1] (Pl.'s Br. at 4.) In addition, plaintiff offers Pay-Per-View programming, which allows subscribers to purchase individual movies, sporting

---

[1] The Court notes that Plaintiff's complaint, however, states that such services costs $13.99 to $16.99 per month per service. (Compl. at ¶9.)

**NOT FOR PUBLICATION**

events, or other entertainment for a per event fee ranging from approximately $4.00 to $49.99 per event.

Comcast prevents subscribers from receiving services they have not paid for by encoding or "scrambling" the signals for specific programming services. Comcast provides subscribers with a decoder that enables the providers to watch the specific programming services for which they have paid. Programs the subscriber has not purchased will remain scrambled and not viewable.

According to the complaint, on or about December 4, 2000, defendant purchased "pirate" cable television transmission decoding equipment from Wholesale Electronics. (Compl. at ¶22.) Plaintiff characterizes this equipment as designed only for the purpose of circumventing the security functions of plaintiff's technology and descrambling all scrambled "premium" and "pay-per-view" cable programming services available on plaintiff's system without authorization or payment to plaintiff. (Pl.'s Br. at 2.)

Plaintiff filed the complaint in this matter on September 20, 2006 and defendant was personally served on October 2, 2006. Defendant did not answer or otherwise respond to the complaint. On February 22, 2007, at plaintiff's request, the Clerk entered default against defendant. By this motion, plaintiff requests entry of judgment pursuant to 47 U.S.C. § 553. Specifically, plaintiff requests statutory damages of $10,000, attorneys fees in the amount of $2,242.50, costs of $414.78, and pre-judgment interest of $23.10, all totaling $12,680.38. Additionally, plaintiff requests that defendant be enjoined from further violation of §553.

**LEGAL STANDARD**

NOT FOR PUBLICATION

### Standard for Default Judgment

Federal Rule of Civil Procedure 55(b)(2) authorizes courts to enter a default judgment against a properly served defendant who fails to file a timely responsive pleading. Anchorage Assoc. v. Virgin Is. Bd. of Tax. Rev., 922 F.2d 168, 177 n. 9 (3d Cir. 1990) ("When a defendant fails to appear. . . the district court or its clerk is authorized to enter a default judgment based solely on the fact that the default has occurred."). The entry of default judgment is a matter left to the sound discretion of the trial court. See Harad v. Aetna Cas. & Sur. Co., 839 F.2d 979, 982 (3d Cir. 1988). However, the Third Circuit has repeatedly stated its strong preference that cases be disposed of on the merits and required that district courts determine whether any sanction short of a default judgment would be effective. See Hritz v. Woma Corp., 732 F.2d 1178, 1181 (3d Cir. 1984).

In considering a motion for default judgment, the Court should accept as true the factual allegations of the complaint except those allegations concerning the amount of damages. Comdyne I, Inc. v. Corbin, 908 F.2d 1142, 1149 (3d Cir. 1990); Comcast Cable Comm. v. Weigel, No. 05-2016, 2006 WL 2460652, at *2 (D.N.J. Aug. 22, 2006). But, "the court need not accept the moving party's legal conclusions because" even after default it "remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." Direct TV Inc. v. Asher, No. 03-1969, 2006 WL 680533, at *1 (D.N.J. March 14, 2006) (quoting 10A Charles A. Wright, et al., Federal Practice & Procedure § 2688 (3d ed. 1998)).

### Communications Act – 47 U.S.C. § 553

**NOT FOR PUBLICATION**

Plaintiff alleges that defendant violated 47 U.S.C. § 553, which prohibits unauthorized reception of cable service. Specifically, subsection (a)(1) of the statute provides that "No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law." Under subsection (c)(2)(a) and (c)(3)(a), where the Court finds a violation of subsection (a)(1), it may grant an injunction and may award statutory damages of not less than $250 or more than $10,000 as the court considers just.

**DISCUSSION**

**Liability**

Defendant failed to respond to the complaint and has not appeared to show any reason why judgment should not be entered. Plaintiff asserts that defendant purchased a device designed to descramble encrypted programming and which has no legitimate function or purpose. (Pl.'s Br. at 2). Plaintiff also states that defendant was a subscriber to plaintiff's service from before the time he purchased the device until August 15, 2003. (Compl. at ¶21.) Plaintiff is somewhat imprecise in defining the period of time during which it believes defendant was violating the statute. The complaint alleges only that defendant "was receiving Plaintiff's cable programming signal from August 2, 1991 to August 15, 2003." (Id.)

Plaintiff's motion for default judgment and supporting documents do not specify the relevant time period. The one exception is the Certification of Stanley F. McGinnis, which states "No doubt defendant has been engaged in the unauthorized interception and reception of Comcast's cable television services by use of unauthorized, modified pirate cable television

**NOT FOR PUBLICATION**

descrambling and decoding devices since the date of purchase of the within Motion." (McGinnis Cert. at 5.)  It is somewhat difficult to decipher plaintiff's allegations because the motion for default judgment and its supporting documents, including the McGinnis Certification, appear to be largely copied from other cases involving defendants who continued to subscribe to Plaintiff's services at least until the filing of a complaint.

Given the explicit dates provided in the Complaint, the Court reads these documents as alleging that defendant has used such device in violation of  47 U.S.C. §553(a)(1) only from the winter of 2000, when defendant purchased the device, until August 15, 2003.[2]  Accepting plaintiff's factual allegations, the Court finds that defendant violated  47 U.S.C. §553(a)(1).  See Comdyne I, Inc. v. Corbin, 908 F.2d 1142, 1149 (3d Cir. 1990);  In re Victor Int'l, Inc., 278 B.R. 67, 82 (Bankr. D.N.J. 2002) (upon entry of default, moving party is entitled to all reasonable inferences from the evidence offered).

**Damages**

Plaintiff argues that it is difficult to determine actual damages incurred by defendant's use and urges the Court to award the statutory maximum of $10,000.  In justifying the magnitude of this award, plaintiff argues that defendant's behavior constituted a willful violation of the Act, urges the Court to consider the seven years useful life of the descrambling device, and calculates that by pirating all premium channels and pay-per-view programs, the defendant could receive over $5,000 per month in unauthorized programming.  (Pl.'s Br. at 7).  The Court accepts

---

[2] While it is possible that defendant had access to plaintiff's signal after he stopped subscribing to any Comcast services, plaintiff does not make any such allegation and the facts presented do not support such an inference.

**NOT FOR PUBLICATION**

plaintiff's argument that it is difficult to ascertain actual damages under these facts. Moreover, by failing to appear, defendant has assured that any estimate of actual damages would be arbitrary. Weigel, 2006 WL 2460652, at *5. For these reasons, statutory damages are appropriate.

In considering whether to impose the statutory maximum, the Court notes that defendant was in possession of the device for over two and a half years while also receiving plaintiff's signal. While the Court will not consider the full seven years useful life of the descrambling device because defendant has not been in possession of the device for seven years, two and a half years is a substantial period of time. Plaintiff's $5,000 a month figure is less than helpful; as other courts have noted, "[t]hose who steal cable television presumably must sleep, eat, bathe, go to work shop, and otherwise go about their daily lives." See, e.g. Id. at *4.

"To calculate a 'just' award of statutory damages, most courts consider the value of the services to which the defendant had unauthorized access." See Id. at 3. Dividing $10,000 over the approximately thirty-three months during which defendant was using unauthorized services, this award equals approximately $303 per month. Although this amount is substantial, it is entirely plausible defendant may have consumed services totaling or exceeding this amount per month, given the costs for plaintiff's premium and Pay-Per-View services. Additionally, the Court finds pre-judgment interest is appropriate, and awards plaintiff the $23.10 in prejudgment interest requested. See Cabrera, 2005 WL 3544698, at *2.

**Costs & Fees**

**NOT FOR PUBLICATION**

The Communications Act authorizes the Court to award full costs, including reasonable attorney's fees. 47 U.S.C. §553(2)(c). Plaintiff submitted a certification by counsel, Francis X. Riley III, setting forth the costs and attorneys' fees incurred in litigating this case. The Court finds the costs identified – $350 in filing fees and $64.78 for process service fees and other costs – to be reasonable. To calculate attorneys fees, the Court multiplies the "number of hours reasonably expended on the litigation" by a "reasonable hourly rate." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). Plaintiff identifies four time-keepers, billing a total of 13.5 hours. (Am. cert. of Francis X. Riley, III at 3). Multiplying each time-keeper's time by billing rate, plaintiff calculates total fees of $2,242.50. A review of the itemized bill, which identifies the tasks completed by each time-keeper, indicates that the hours logged are no "excessive, redundant, or otherwise unnecessary." Hensley, 461 U.S. at 434. The Court will award plaintiff $2,242.50 in attorneys' fees.

**Injunction**

Under §553(c)(2)(a) of the Communications Act, the court may grant a final injunction on such terms as it may deem reasonable to prevent or restrain violations of subsection (a)(1). In deciding whether to issue a permanent injunction, a plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, in considering the balance of hardships between the plaintiff and the defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. Ebay Inc. v. Mercexchange, LLC, 126 S.Ct. 1837, 1839 (2006); Zen Investments, LLC v. Unbreakable Lock Co., No. 06-1112,

**NOT FOR PUBLICATION**

2006 WL 1582333, at *3 (E.D.Pa. June 2, 2006) (Supreme Court's Ebay decision answered unsettled question in the Third Circuit as to whether "irreparable harm" is a necessary showing for a permanent injunction).[3]

Taking those factors in reverse order, it is clear that entry of an order enjoining defendant from further illegal use of the decoder would not harm the public interest. As to balancing the hardships, under the facts alleged and accepted by this Court, defendant has clearly violated 47 U.S.C. § 553. Such conduct results in a substantial loss of revenue for plaintiff. The only benefit to defendant is the consumption of unauthorized cable programming. Accordingly, the balance of hardships tips strongly in favor of plaintiff.

Finally, with respect to the first and second factors above, the Court finds that the nature of defendant's conduct suggests both that a remedy at law would be inadequate and that plaintiff is at significant risk of suffering irreparable harm. From plaintiff's submissions, it appears that plaintiff only learned of defendant's violation of 47 U.S.C. §553 by discovering that defendant purchased an illegal device. Given the difficulty in detecting and measuring any future use of this device to unlawfully access more programming, plaintiff has a legitimate and compelling concern that defendant will continue to violate the statute. Moreover, there exists a significant risk that defendant may continue to do so without repercussion, quite literally causing plaintiff irreparable injury. While defendant is no longer a subscriber to plaintiff's service, plaintiff states

---

[3]Prior to Ebay, numerous courts in this Circuit considering Communications Act violations have noted that where authority for an injunction is provided by a statute – as in the Communications Act – courts may issue an injunction without considering the traditional equitable factors. In light of Ebay, it is not clear that district courts may dispense with the four-factor test so easily.

-9-

**NOT FOR PUBLICATION**

that the device defendant purchased in December, 2000 has seven years of useful life.  The device may still be operational, in which case defendant could re-subscribe to plaintiff's services and resume unlawfully accessing plaintiff's service.  By enjoining defendant from any further use of the illegal device he purchased from Wholesale Electronics, this Court will at least reduce the likelihood that defendant will re-subscribe and resume use the device because any such use would be in direct violation of a court order.

### CONCLUSION

For the foregoing reasons, the Court will enter default judgment against defendant in the amount of $10,000, will award plaintiff $2,242.50 in attorney's fees, $414.78 in costs, and $23.10 in prejudgment interest for a total of $12,680.38.  The Court will also enjoin the Defendant from committing or assisting in the commission of any further violations of §553(a)(1).

**s/William H. Walls**
United States Senior District Judge

**Appearances**
Attorney for Plaintiff:
Francis X. Riley, III
Saul Ewing LLP